**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

Rod J. Rosenstein
United States Attorney

Michael C. Hanlon
Chief, Violent Crimes

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 JUL 11  P 4: 08

CLERK'S OFFICE
AT DIRECT: 410-209-4895
MAIN: 410-209-4800
FAX: 410-962-3124
BY ___  TTY/TDD: 410-962-4462
Michael.Hanlon@usdoj.gov

July 3, 2014

Ivan Bates, Esquire

> Re: United States v. Leonard Benjamin
> Crim. No. RDB-14-048

Dear Mr. Bates:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by July 9, 2014, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1. The Defendant agrees to plead guilty to Count One of the Indictment, specifically conspiracy to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

*[handwritten: Supersed... inch / LB]*

### Elements of the Offense

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

> i. That from in or about 2013 through in or about February 2014, in the District of Maryland, an agreement existed between two or more persons to distribute one kilogram or more of a mixture of substance containing a detectable amount of heroin; and

> ii. The Defendant knowingly became a member in and joined that agreement.

Revised 8/8/08

## Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: life imprisonment, with a mandatory minimum term of ten (10) years imprisonment, a period of supervised release for at least five, but no more than five years, and a fine of $10 million. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

(a) If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

(b) If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

(c) If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

2

witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

        (d)    The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

        (e)    If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        (f)    By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

        (g)    If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

        (i)    By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

## Advisory Sentencing Guidelines Apply

5.    The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.    This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

    a. The parties stipulate that the base offense level is at least 34 because the offense involved at least three kilograms of heroin, pursuant to

3

U.S.S.G. § 2D1.1(c)(3). The offense level is increased by two levels because the offense involved the operation of a stash house, and by four levels because the defendant was an organizer/leader in a criminal activity involving five or more participants.

b. The offense level will be calculated pursuant to U.S.S.G. § 4B1.1 in the event that the defendant is found to be a career offender. The parties dispute whether the defendant is a career offender.

c. <u>Effect of Proposed U.S.S.G. Changes</u>: In anticipation of the forthcoming changes to the Drug Quantity Table in the United States Sentencing Guidelines 2D1.1, the United States hereby agrees not to oppose a 2-level downward variance. In exchange, the defendant agrees not to seek a sentence reduction under 18 U.S.C. § 3582(c)(2) based on the retroactive application of Amendment # 3 to the USSG submitted to Congress on April 30, 2014.

d. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that the following facts and/or sentencing guidelines factors are in dispute:

a. The Defendant reserves the right to seek a downward departure, adjustment or variance on the grounds that his criminal history is overstated. This Office reserves the right to oppose such a downward departure, adjustment or variance.

With respect to the calculation of the advisory guidelines range, no *other* offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Rule 11 (c) (1) (C) Plea

9.  The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of no less than 168 months (14 years) imprisonment and no more than 252 months (21 years) imprisonment in the custody of the Federal Bureau of Prisons, is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

### Obligations of the United States Attorney's Office

10.  At the time of sentencing, this Office will recommend a sentence of no more than 21 years imprisonment.

11.  The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

### Waiver of Appeal

12.  In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a)  The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b)  The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it is above 21 years

       imprisonment (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below 14 years imprisonment.

c)    Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d)    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

13.    The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Forfeiture

14.    The parties agree as follows:

a.    The Defendant agrees to forfeit to the United States all of his right, title, and interest in any and all money, property, or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including but not limited to the following:

$39,387 in United States currency seized on February 7, 2014

b.    The Defendant agrees to assist fully the United States in the forfeiture of the foregoing assets. The Defendant agrees to take all steps necessary to pass to the United States clear title to these assets, including but not limited to executing any and all documents

6

necessary to transfer his interest in any of the above property to the United States, assisting in bringing any assets located outside the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The Defendant further agrees that he will not assist a third party in asserting a claim to the foregoing assets in an ancillary proceeding.

     c.    The Defendant knowingly waives all constitutional, legal and equitable defenses to the forfeiture of the foregoing assets. It is further understood that, in the event that the United States files a civil action pursuant to 18 U.S.C. § 981 and/or 21 U.S.C. § 881 or any law enforcement agency initiates a forfeiture proceeding seeking to forfeit these assets, the Defendant will not file a claim with the Court or agency or otherwise contest such a forfeiture action and will not assist a third party in asserting any such claim. It is further understood that the Defendant will not file or assist anyone in filing a petition for remission or mitigation with the Department of Justice concerning the forfeited assets.

     d.    The Defendant agrees to identify all other assets and identify the sources of income used to obtain all other assets, including identifying all assets derived from or acquired as a result of, or used to facilitate the commission of, any crime charged in the Indictment. The United States reserves the right to proceed against any remaining assets not identified in this agreement, including any property in which the Defendant has any interest or control.

## Court Not a Party

15.    The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, sentence is imposed by the Court, and the Court is under no obligation to accept this plea agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw his plea. If he persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, his attorney, nor the Court can make a binding prediction or promise that the Court will accept this agreement. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

16.    This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Michael C. Hanlon
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

7-9-14
Date

_____
Leonard Benjamin

I am Leonard Benjamin's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

7-9-14
Date

_____
Ivan Bates, Esquire

8

<u>Attachment A</u>

The United States would prove the following facts beyond a reasonable doubt at trial:

From no later than 2013, the defendant Leonard Benjamin entered into a conspiracy with others to distribute heroin in the Baltimore, Maryland area. Benjamin would plan trips to New York City during which he would purchase heroin. Benjamin gave the heroin to driver couriers in New York, and the driver couriers would drive the heroin back to Baltimore. Benjamin had other persons who operated stash houses for him in the Baltimore area. Those stash house operators wold receive the heroin and would deliver the heroin to locations directed by Benjamin.

During October 2013, members of the Drug Enforcement Administration (DEA) and Baltimore Police Department (BPD) were monitoring the phone conversations of Benjamin on his cellular phone, pursuant to a state court wiretap authorization. On October 20, 2013, Benjamin arranged with a courier to drive up to New York, where Benjamin planned to acquire heroin. Law enforcement agents in Baltimore and in New York surveilled the movements of Benjamin and the courier that day, and agents observed Benjamin and the courier meet for a brief time in New York. During that brief meeting, Benjamin provided a quantity of heroin to the courier. The courier then left New York and returned to Maryland.

The Maryland State Police, in conjunction with the DEA investigation, executed a lawful traffic stop of the courier in Cecil County, Maryland as she was on her return trip. MSP troopers then conducted a lawful search of the courier's vehicle, based on probable cause that the courier had drugs inside the car. Inside the vehicle, the troopers discovered a quantity of heroin. Lab analysis of the heroin verified that it was more than 400 grams of heroin, a schedule I controlled substance. This heroin was possessed by the courier in furtherance of the conspiracy, and Benjamin had intended for the courier to transport the heroin to one of his stash house locations in the Baltimore area.

Benjamin continued to engage in drug-trafficking activities following the October 2013 events. During continued wiretap monitoring, investigators overheard Benjamin regularly make drug deals by phone, including making arrangements to acquire new supplies of heroin, as well as by giving instructions to other persons to receive, store, or distribute heroin to customers. On a regular basis, Benjamin would make phone calls to a co-conspirator who operated a stash house location at Benjamin's direction. Benjamin would give the co-conspirator information, usually a number, followed by a car description and a location, that indicated that the co-conspirator was supposed to bring that quantity of heroin to a customer in a particular car at that location. Investigators surveilled the co-conspirator making deliveries following those instructions and on one occasion stopped a customer and retrieved a quantity of heroin from that customer, after meeting with Benjamin's co-conspirator. Following the deliveries, Benjamin would often allow the co-conspirator to keep a quantity of the money received from the customer for the heroin. Benjamin would also come to the stash house personally from time to time.

On February 7, 2014, investigators executed federal arrest and search warrants connected with this case. Investigators executed a search warrant at one of the stash house locations (located in Baltimore, Maryland) operated by Benjamin and one of Benjamin's co-conspirators. Inside that location, agents recovered more than 600 grams of heroin.

During a search of the other locations, investigators retrieved quantities of United States currency, including $39,387 in cash from Benjamin's home.

The parties agree that the defendant was an organizer and leader of this criminal activity, in that he have specific directions and orders to other members of the conspiracy to pick up heroin, transport heroin, and distribute heroin under circumstances set by the defendant. Other members of the conspiracy did as the defendant directed, and stored quantities of heroin in stash locations at the defendant's direction. The parties agree that the criminal activity in this case involved five or more participants, including the defendant, his couriers, and persons involved in the storage and distribution of heroin in the Baltimore area, among other people.

At the defendant's direction and with his knowledge, and in furtherance of the conspiracy, members of the conspiracy maintained premises, including the residence from which 600 grams of heroin was recovered on February 7, 2014, for the purpose of distributing the heroin.

The government's evidence consists of, among other things, seizures of narcotics, narcotics paraphernalia and other evidence pursuant to search warrants and electronic surveillance, including the monitoring of telephone conversations occurring over the Defendant's and others' cellular telephones. The parties agree that at least three kilograms of heroin was distributed in furtherance of and within the scope of this conspiracy, and that quantity of heroin was reasonably foreseeable to the Defendant.

_____
Michael C. Hanlon
Assistant United States Attorney

I have read this Statement of Facts and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. I do not wish to change any part of it.

7-9-14
Date

_____
Leonard Benjamin

I am Leonard Benjamin's attorney. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is a voluntary one.

7-9-14
Date

_____
Ivan Bates, Esquire

10